**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER STROJNIK, SR., | ) Case No.: 1:19-cv-01098 NONE JLT |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS |
| | ) GRANTING DEFENDANT'S MOTION TO |
| v. | ) DISMISS AND DISMISSING THE ACTION |
| | ) WITHOUT PREJUDICE DUE TO LACK OF |
| BAKERSFIELD CONVENTION HOTEL I, | ) JURISDICTION |
| LLC., | ) |
| | ) (Doc. 21) |
| Defendant. | ) |
| | ) |
| | ) |

Peter Strojnik, Sr, asserts that he is a disabled person within the meaning of the Americans with Disabilities Act and encountered barriers at the Bakersfield Marriot Hotel. (*See* Doc. 20) Defendant seeks dismissal of the First Amended Complaint, asserting Plaintiff lacks standing on his claim under the ADA because he has not stated an injury-in-fact, and Plaintiff's Uhruh Act claim is unsupported by facts. (Doc. 21) Strojnik opposes the motion, asserting his First Amended Complaint states facts sufficient to establish standing and support his claims for relief. (Doc. 22) For the reasons set forth below, the Court recommends Defendant's motion to dismiss be **GRANTED** and the complaint be **DISMISSED** without leave to amend.

**I.     Background and Factual Allegations**

On August 12, 2019, Strojnik initiated this action by filing a complaint against Bakersfield Convention Hotel I, LLC, doing business as Bakersfield Marriott at the Convention Center, for

1

violations of the Americans with Disabilities Act, California's Unruh Civil Rights Act, and the Disabled Persons Act.  (*See* Doc. 1 at 1)  Strojnik asserted Defendant was also liable for negligence per se due to failure to remove accessibility barriers at the Bakersfield Marriot Hotel.  (*Id.* at 6)  Defendant filed a motion to dismiss, which was granted by the Court on January 31, 2020. (Doc. 17)  Strojnik filed a First Amended Complaint on February 24, 2020.  (Doc. 20)

Strojnik alleges he is "a disabled person as defined by the ADA" due to the following conditions: "(i) prostate cancer and genitourinary impairment, (ii) renal cancer, (iii) severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, (iv) degenerative right knee (replaced with prosthesis), (v) degenerative shoulders and limitation on the use of both shoulders, and attendant impairment of elbows and wrists to reach and twist, and (vi) pleurisy."  (Doc. 20 at 3, ¶¶ 2-3)  Strojnik asserts these "impairments substantially limit his major life activities," such that he "requires compliant mobility accessible features at places of public accommodation."  (*Id.* at 3-4, ¶ 5)

In the First Amended Complaint, Strojnik included a chart to establish the relationship between his impairments and major life activities.  (Doc. 20 at 4) According to Strojnik, his history of prostate and renal cancer impairs his "Major Bodily Function."  (*Id.*, ¶ 6) In addition, Strojnik asserts his neural foraminal stenosis and degenerative right knee affect his "[w]alking, standing, sitting, bending, sleeping, [and] working."  (*Id.*)  He also indicates that limitations with his shoulders, elbows, wrists, and pleurisy affect his "[p]erforming manual [t]asks, sleeping, reaching, lifting, writing, [and] working."  (*Id.* at 4-5, ¶ 6) Strojnik contends he "requires an ADA complaint lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted."  (*Id.* at 7, ¶ 16)

Strojnik asserts he "is retired and spends his retirement years traveling for recreation, pleasure and ADA testing."  (Doc. 20 at 5, ¶ 13) As a result, Strojnik contends he "has travelled and lodged in California over 200 times," including stops in Bakersfield.  (*Id.* at 6, ¶ 13(b)-(d)) He alleges that he "travelled to [the] Bakersfield area numerous times and lodged in the vicinity of Defendant's Facility in the past, including August of 2018, either as a final destination or interim location to a different destination."  (*Id.*)

He asserts that he visited the Bakersfield Marriot Hotel on June 5, 2019.  (Doc. 20 at 7, ¶ 17) Strojnik contends he encountered many barriers at the hotel and provided photographs that he asserts

show: (1) an unmarked passenger drop off zone, (2) inaccessible service counters, (3) a door that [r]equires more than 5 lbs to open," (4) inaccessible sales items, (5) a flush control on the wrong side of the toilet, (6) a shower hose that interfered with shower controls, (7) a shower without a "shut off on [the] spray unit," (8) a reflective surface that was "too high," (9) shower water that reached a temperature of 120ºF, and (10) a security latch over 48 inches high.  (*Id.* at 8-15) According to Strojnik, he "requires a marked passenger drop-off zone clear of other vehicles because this grants him the closest accessible route to the entry to the hotel."  (*Id.* at 9) He also reports that he "requires an accessible service counter in order to enjoy full and equal access to the facility."  (*Id.* at 9-10, 12) Similarly, Strojnik contends he requires items to be within "accessible reach" and "complaint door hardware."  (*Id.* at 11, 15) With regard to use of the restroom, Plaintiff asserts he "requires compliant flush control," "mirror reflecting surface, and "spray unit in order to enjoy full and equal access to the facility."  (*Id.* at 12-14) He also reports that he "requires shower water temperature at 120º F or less." (*Id.* at 14) Plaintiff asserts each of these "ADA violations… relate to Plaintiff's disability and interfere with [his] full and complete enjoyment of the Hotel."  (*Id.* at 15)

According to Strojnik, he "intend[ed] to visit Defendant's Facility on the weekend of April 4-5 of 2020 on his way to visit Hotel Circle GL Holdings in Fresno on his way to a joint inspection of Resort at Indian Springs on April 6, 2020 to be followed by a trip to the California Wine Country." (Doc. 20 at 7, ¶13(f)) Thus, Strojnik contends he planned "to visit Defendant's Hotel … when the Defendant's noncompliant Hotel becomes fully complaint with the ADA."  (*Id.*, ¶ 14) He maintains "[t]he removal of accessibility barriers listed above is readily achievable," and "failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation." (*Id.*, ¶¶ 21-22)

Based upon the foregoing, Strojnik seeks to hold Defendant liable for violations of the Americans with Disabilities Act.  (*See generally* Doc. 1 at 7-16) Defendant filed a motion to dismiss the First Amended Complaint on March 9, 2020.  (Doc. 21)  Strojnik filed his opposition to the motion on March 18, 2020.  (Doc. 24)  Both parties filed notices of decisions addressing similar issues following the completion of briefing.  (*See* Doc. 25, 26, 29, 30, 33, 34)

///

3

## II.       The Americans with Disabilities Act

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation, and provides in relevant part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a). The ADA requires that business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).  The Ninth Circuit observed, "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines,' or the 'ADAAG.'" *Oliver*, 654 F.3d at 905.  These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards." *See id*.

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv).  Thus, the Ninth Circuit found:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  A plaintiff need not show intentional discrimination to establish an ADA violation.  *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

## III.       Standing and Rule 12(b)(1)

Defendant argues Strojnik lacks standing to bring his claim under the ADA.  (Doc. 21-1 at 9) The Ninth Circuit observed, "[b]ecause standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  In the context of a Rule 12(b)(1) motion, a plaintiff has the burden of establishing Article III standing to assert the claims. *Id.* at 1122; *see also*

4

1   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (explaining standing is "the core component"

2   of the case-or-controversy requirement under Article III).

3       To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the

4   injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable

5   decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). Further,

6   to establish standing for a claim of injunctive relief, as Plaintiff seeks here, "he must demonstrate a

7   'real and immediate threat of repeated injury' in the future." *Id.* (quoting *Fortyune v. Am. Multi-

8   Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)).  The Ninth Circuit recognized a plaintiff seeking

9   injunctive relief under the ADA can show a likelihood of future injury in one of two ways: (1) by

10  showing "he intends to return to a noncompliant accommodation and is therefore likely to reencounter

11  a discriminatory architectural barrier," or (2) by demonstrating "sufficient injury to pursue injunctive

12  relief when discriminatory architectural barriers deter him from returning to a noncompliant

13  accommodation." *Id.* at 950.

14      An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and

15  particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of

16  Wildlife*, 504 U.S. 555, 560 (1992) (omitting internal citations). An injury is concrete and particularized

17  when a plaintiff suffers discrimination due to barriers at a public accommodation and those barriers

18  have deterred plaintiff from returning.  *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).  A

19  plaintiff suffers an "actual and imminent" injury under the ADA when he alleges "(1) that he visited an

20  accommodation in the past; (2) that he was currently deterred from returning to the accommodation

21  because of ADA violations; and (3) that he would return if the ADA violations were remedied." *Id.*

22  (citing *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)).

23      When a plaintiff fails to plead facts setting forth the barriers encountered or the injury suffered,

24  the allegations are insufficient to establish standing.  *See Chapman*, 631 F.3d at 954-55; *Doran*, 524

25  F.3d at 1041.  For example, in *Chapman* the Ninth Circuit determined the plaintiff lacked standing

26  because he "[left] the federal court to guess" what barriers he encountered, how those barriers deprived

27  him of full and equal access due to his disability, and how those barriers deterred him from visiting the

28  store.  *Id.*, 631 F.3d at 954-55.  The plaintiff alleged only that he was "physically disabled," and he

1   "visited the Store" where he "encountered architectural barriers that denied him full and equal access."

2   *Id.*, 631 F.3d at 954.  The Court found these allegations were insufficient because the plaintiff did not

3   allege the exact barriers he encountered or "how his disability was affected by [the barriers] so as to

4   deny him the 'full and equal' access that would satisfy the injury-in-fact requirement."  *Id.*  The Court

5   explained a plaintiff lacks standing "if the barriers he seeks to enjoin do not pose a real and immediate

6   threat to him *due to his particular disability*."  *Id.* at 953 (emphasis added).  Thus, the barriers

7   identified by Strojnik at Bakersfield Marriot Hotel must relate to his disabilities.

8       **A.      Photographs of alleged barriers**

9          As an initial matter, the Court notes that Strojnik again incorporated photos into his First

10   Amended Complaint.  (*See* Doc. 20 at 7)  Strojnik alleges he "encountered numerous" barriers at the

11   Bakersfield Marriot Hotel and includes photos that purport to depict an unmarked passenger drop off

12   zone; inaccessible service counters and sales items; a door that requires more than 5 lbs to open; a

13   toilet with the flush control "on [the] wrong side," a shower with a hose interfering with the controls,

14   without a shut off spray on the unit, and water temperature over 12 degrees; a mirror that was too high;

15   and a security latch over 48 inches from the ground.  (*See id.* at 14-15)

16          Strojnik fails to provide information about the photographs taken, such as whether the

17   photographs and measurements were taken by Plaintiff or another individual; whether the bathroom,

18   shower, and bedroom door were in a room intended to be ADA accessible; and whether there were

19   alternative access points to the counters or sales items depicted.  Courts have determined such

20   photographs—without such additional information—do not support Strojnik's allegations of barriers

21   encountered at a hotel or establish his standing.  *See, e.g., Strojnik v. Victus Grp, Inc.*, 2020 WL

22   1492664 at *3 (E.D. Cal. Mar. 27, 2020) (finding photographed barriers failed to establish "actual

23   knowledge" because "it is not clear what the source of the pictures are, whether the pictures concern

24   rooms that are intended to be ADA compliant, or whether Strojnik confirmed the existence of the

25   barrier with [the hotel]"); *Strojnik v. Four Sisters Inns, Inc.,* 2019 WL 6700939 at *3 (C.D. Cal. Dec. 9,

26   2019) (holding Strojnik's photographs and captions to be bare legal conclusions insufficient to show

27   how there are purported barriers his to accessibility); *Strojnik v. HPTRI Corp.*, 2020 WL 6827765 at *3

28   (D.Az. Nov. 20, 2020) ("the grainy photos of the alleged violations in the Complaint do nothing to give

6

him standing"). Consequently, the Court finds the photos of unspecified features at Bakersfield Marriot Hotel do not support Strojnik's ADA claim or establish standing.

**B.     Passenger drop off zone**

Plaintiff provides a photo captioned "Unmarked Passenger Drop Off Zone," and referenced standard "209." (Doc. 20 at 9) Under the 2010 ADA Standards for Accessible Design (ADAAG), Sections 209 and 503 "require passenger loading zones to have a marked access aisle." *See Strojnik v. Orangewood LLC,* 2020 U.S. Dist. LEXIS 11743 at *11 (C.D. Cal. Jan. 22, 2020), *affirmed* 829 Fed. App'x 783 (9th Cir. Nov. 17, 2020). As the Northern District observed, the ADAAG requires only that the access aisles to passenger loading zones "be marked so as to discourage *parking* in them." *Strojnik v. VY Verasa Commer. Co. LLC*, 2020 U.S. Dist. LEXIS 169026 at *20 (N.D. Cal. Sept. 15, 2020) (citing ADAAG § 503.3.3, emphasis in original). There are no other standards for drop of zones to be marked. *See Orangewood,* 2020 U.S. Dist. LEXIS 11743 at *11. For example, there is no requirement for an establishment to have "a sign or some other identification about where to get dropped off" under the ADAAG. *Id.*

In *Orangewood,* Strojnik alleged that he "requires a 'marked drop off zone so he can get in and out of the vehicle in a properly marked location in front of the Hotel' and… 'requires the closest accessible route' from the drop off point to the hotel entrance." *Id.*, U.S. Dist. LEXIS 11743 at *11. The Northern District observed:

> To the extent Plaintiff is arguing there should be a sign or some other identification about where to get dropped off, such a requirement is not found in the ADAAG. To the extent Plaintiff is arguing that there is no marked access aisle, he has not sufficiently alleged that he needs an access aisle to exit a vehicle.

*Id.* Thus, the court concluded Plaintiff had "not sufficiently alleged a concreate and particularized injury related to a 'marked passenger drop off zone.'" *Id.* The Ninth Circuit affirmed, finding the court properly dismissed the action for lack of standing "because Strojnik failed to allege the ADA barriers he identified affected him because of his disabilities." *Orangewood*, 829 Fed. App'x at 783.

Similarly, here, Strojnik asserts he "requires a marked passenger drop-off zone clear of other vehicles because this grants him the closest accessible route to the entry to the hotel." (Doc. 20 at 9) However, as Defendant observes, "ADAAG requires only that a disabled person be provided with an

1    access to an accessible entrance, not the 'closest.'"  (Doc. 21-1 at 15, emphasis omitted).  Notably,

2    Strojnik fails to allege that he was, in fact, a *passenger* in a vehicle—rather than the driver— when he

3    arrived at Bakersfield Marriot Hotel and attempted to be dropped off outside the hotel.  Furthermore,

4    Plaintiff fails to allege facts sufficient to support a determination that his conditions require use of an

5    access aisle to exit a vehicle.  Thus, the Court finds Plaintiff fails to allege an injury "due to his

6    particular disability." *See Chapman*, 631 F.3d at 953; *Orangewood*, 829 Fed. App'x at 783.

7        **C.    Inaccessible service counters**

8        Strojnik included three photos with the caption "[i]naccessible service counter" in his First

9    Amended Complaint.[1]  (Doc. 20 at 9-10, 12)  Strojnik asserts he "requires an accessible service

10   counter in order to enjoy full and equal access to the facility," and references ADAAG standard "904."

11   (*Id.*)  Section 904 of the ADAAG indicates that it intends to address standards of counters "so that a

12   personal using a wheelchair is visible to sales or service personnel and to minimize the reach for a

13   person with a disability."  *See* ADAAG, § 904 ("Advisory 904.2 Approach).  Thus, a counter should

14   either be a maximum of 38 inches above the floor to provide a forward approach, *or* a counter may

15   have an accessible parallel approach, such that a person in a wheelchair could approach the side of the

16   counter to be seen by service personnel.  *See id.,* § 904.

17       Defendant contends Strojnik fails to show he has a disability that relates to the counters because

18   "nowhere in his complaint does Strojnik claim to use a wheelchair or that he used a wheelchair when he

19   visited the Hotel."  (Doc. 21-1 at 12, citing *Rutherford v. Los Charros*, 2019 U.S. Dist. LEXIS 60156 at

20   *2 (S.D. Cal. Apr. 5, 2019))  In *Los Charros*, Rutherford was ordered to show cause why the action

21   should not be dismissed for lack of jurisdiction because it was not sufficient for him to state that he "at

22   times" used a wheelchair and identify "technical ADA violations in the parking lot and restroom that

23   might affect someone who uses a wheelchair."  *Id.*, 2019 U.S. Dist. LEXIS 60156 at *2.  The Southern

24   District explained: "To show the kind of concrete injury necessary to establish jurisdiction at the

25   pleading stage, he must plead facts showing the likelihood that he would visit Los Charros again while

26

27       _____

28       [1] Strojnik fails to provide any information regarding the location of the photographed service counters. Although very difficult to discern given the quality of the photos, it appears one counter may be in a reception area and one in a bar/restaurant.  (*See* Doc. 20 at 9-10, 12)

using a wheelchair, and that the violations he alleges would be likely interfere with his full and equal use of the facilities." *Id.* Likewise, the court determined Rutherford failed to establish standing under the ADA when the facts were insufficient to conclude he required wheelchair-accessible counters at the time of a hotel visit. *See Rutherford v. Econolodge*, 2019 WL 950329 at *4 (S.D. Cal. Feb. 27, 2019). The court noted:

> Rutherford "at times" uses a wheelchair, but he does not say how often this is. He does not say what other mobility devices he uses, or how often. Nor does he allege facts showing it is likely—as opposed to merely hypothetical or speculative—that he would be using a wheelchair or a similar mobility device that required the lobby's sales counter be accessible. If, for example, he would likely be using a walker or cane and could approach and use the counter without difficulty, there would be no need for an injunction ordering Defendants to make alterations to the counter.

*Id.* 2019 WL 950329 at *4. The court concluded Rutherford failed to allege facts to support standing because "it is not enough for Rutherford simply to identify ADA violations that could affect people with disabilities similar to his; he must allege an actual, concrete injury to himself." *Id.* (citing *Lujan*, 504 U.S. at 560; *Chapman*, 631 F.3d at 947).

Strojnik's pleadings suffer the same infirmities as *Rutherford*. Strojnik suggests he uses a wheelchair at times, by stating he "requires an ADA lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted." (Doc. 20 at 7, ¶ 16) Nevertheless, as Defendant notes, Strojnik does not allege that he was in a wheelchair when he visited the Bakersfield Marriot, or that or he required a wheelchair at any point during his visit. (*See generally* Doc. 20) Further, Strojnik does not assert in opposing the motion to dismiss that he required use of a wheelchair at any point during his visit to the Bakersfield Marriot. (*See generally* Doc. 24) Thus, Strojnik is unable to establish a concrete injury related to the accessibility of the counters at the Bakersfield Marriot, and fails to establish standing due to these alleged barriers. *See Rutherford,* 2019 WL 950329 at *4; *see also Orangewood*, 829 Fed. App'x at 783.

### D.    Accessible doorway

Strojnik photographed a double-door entry and indicated in the caption it "[r]equires more than 5 lbs to open," and referenced ADAAG section 309. (Doc. 30 at 10) The ADAAG provides standards governing "[d]oors, doorways, and gates that are part of an accessible route." ADAAG § 404.1. The ADAAG indicates that "[h]andles, pulls, latches, locks, and other operable parts on doors and gates

9

1    shall comply with 309.4." *Id.* § 404.2.7. That provision, in turn requires "operable parts" to be

2    operable with only one hand and require force of 5 pounds maximum to activate. *Id.* § 309.4.

3         The photograph in the First Amended Complaint depicts a handicap activation button to the

4    side of the doors.  As Defendant observes, "there is no allegation that the button requires more than 5

5    lbs of pressure to activate."  (Doc. 21-1 at 15)  In addition, Defendant contends there is not "any

6    allegation that would link Strojnik's … medical problems with the ability to open the door. He does

7    not, for example, allege that he was too weak to push the button to open the door, that he could not

8    otherwise open the door, or even identify which door in the hotel he is referring to."  (*Id.*)

9         Significantly, it is unclear from the pleading whether Strojnik believed the door handle

10   required more than 5 lbs. of pressure to open the door, or whether the button to open the door required

11   more than 5 lbs. of pressure.  In his opposition to the motion to dismiss, Strojnik does not respond to

12   Defendant's criticism that he failed to link any impairment to difficulty opening the doorway, or

13   identify any allegations in the complaint explaining how one of his impairments impacts his ability to

14   pull open a door, or push a button to open the door.  Thus, Strojnik fails to establish a concrete injury,

15   and this alleged barrier does not establish standing under the ADA.  *See Chapman*, 631 F.3d at 953;

16   *Strojnik v. 1530 Main LP*, 2020 WL 981031 (N.D. Tex. Feb. 28, 2020) (finding Strojnik had "not

17   demonstrated standing to bring an ADA claim, where the alleged barriers encountered included a door

18   that took "[m]ore than 5lbs to open" because he did not explain how the barrier "relate[s] to his

19   disability").

20        **E.    Inaccessible sales items**

21        Strojnik photographed self-service items at the hotel and indicated there were "[i]naccessible

22   sales items" in violation of ADAAG § 308.  (Doc. 20 at 11)  Significantly, ADAAG § 308 relates to

23   "reach ranges" for individuals in a wheelchair, including forward reach and side reach.  As discussed

24   above, Plaintiff does not assert that his disabilities required use of a wheelchair when he visited the

25   Bakersfield Marriot Hotel.  Consequently, the facts alleged fail to support a conclusion that Plaintiff

26   suffered a concrete injury for any sales items being beyond the reach ranges specified in Section 308.

27        **F.    Toilet flush control location**

28        According to Strojnik, the flush control the photographed toilet was on the wrong side, in

                                              10

violation of standards identified under ADAAG § 604.  (Doc. 20 at 12)  Section 604 provides different standards for ambulatory accessible compartments as well as wheelchair accessible compartments. Notably, Strojnik fails to allege how the location of the flush control violates the standards.  Instead, he offers only the conclusion that it was on the "wrong side" of the tank.  *See Strojnik v. Hotel Circle GL Holdings, LLC*, 2019 WL 6212084 at *3 (E.D. Cal. Nov. 21, 2019) (finding Strojnik's assertion that a "flush control [was] on the wrong side of tank," was a "bare legal conclusion").

Although Strojnik does not explain whether the photographed compartment was designed to be wheelchair accessible or ambulatory, based upon the location of the grab bars behind the toilet and to the side, it appears Strojnik photographed a wheelchair accessible water closet.  *See* The Department of Justice, "2010 ADA Standards for Accessible Design," Section 604.2, *available at* https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm#pgfId-1006287 (last visited January 25, 2021).  Thus, flush controls for the toilet should be "located on the open side of the water closet," while the same standard does not apply in ambulatory accessible compartments. ADAAG § 604.6.  However, as discussed above, Strojnik did not require use of a wheelchair accessible toilet during his visit to the Bakersfield Marriott Hotel.

In addition, Strojnik did not allege that he was unable use the flush control on the "closed" side of the toilet due to his disability.  Because are no facts linking Strojnik's disabilities to the location of the flush control— whether on a wheelchair accessible or an ambulatory accessible toilet—Strojnik has not stated a concrete injury for any violation of the standards under ADAAG § 604, and this alleged barrier does not establish standing under the ADA.  *See Hotel Circle GL Holdings*, 2019 WL 6212084 at *3 (finding he failed to state an injury in fact because there was no information regarding how the flush control location "relate[d] to plaintiff's specific disability or disabilities").

### G.      Shower hose

Strojnik photographed a portion of a shower, and he indicated the hose interfered with shower controls in violation of standards in ADAAG § 609.  (Doc. 20 at 13)  Curiously, Section 609 relates only to "[g]rab bars in toilet facilities and bathing facilities."  *See* ADAAG § 609.  Strojnik does not identify any other provision of the ADAAG, or quote language that indicates a shower hose may not hang over the controls under the ADA.  Furthermore, there are no facts that explain how his disability

relates to use of the shower hose, or need for the hose to not loop around the control as pictured.  Thus, Strojnik fails to allege an injury-in-fact related to the alleged shower hose barrier.

### H.   Shower head spray unit

Strojnik asserts the fact that the shower had "[n]o shut off on [the] spray unit" was a barrier in violation of standards under ADAAG § 607.  (Doc. 20 at 13)  He alleges he "requires [a] compliant spray unit in order to enjoy full and equal access to the facility."  (*Id.*)  Notably, Section 607 relates to *bathtubs*, while Section 608 relates to showers.  Nevertheless, Strojnik fails to identify any specific requirement under the ADAAG that requires an on/off control on the shower head itself in an ADA accessible shower.  There also is no explanation why Strojnik would require the control to be located on the shower head, rather than on the shower wall, due to his specific disability or disabilities.  Without such facts, the Court is unable to find Strojnik suffered an injury-in-fact related to the location of the shower controls.  *See VY Verasa Commer. Co.*, 2020 U.S. Dist. LEXIS 169026 at *25 ("Strojnik's allegation with the shower head is that he must be able to turn it off using the head itself, but he cites no authority for that proposition in the ADAAG and he does not explain in enough detail to permit [the court] to determine that he was denied full and equal enjoyment").

### I.   Shower water temperature

Strojnik photographed water in an unidentified location at a temperature of 132º.[2] (Doc. 20 at 14) He asserts that he "requires shower water temperature at 120 º or less in order to enjoy full and equal access to the facility."  (*Id.*)  However, Strojnik does not allege any facts supporting a conclusion that one of his disabling conditions affects his tolerance of hot temperatures.  (*See id.* at 4-5)  Because he does not link any of his impairments to such a temperature intolerance, the Court is unable to find this alleged barrier caused a concrete injury related to Strojnik's disability.  *See Chapman*, 631 F.3d at 953 (a plaintiff lacks standing "if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability").

### J.   Height of reflective surface

---

[2] Due to the poor quality of the photos, the Court is unable to determine without question that the water photographed was in the shower, as opposed to the sink.  Indeed, it appears the water is in a small container inside the sink, which Strojnik photographed with water running into a glass. (Doc. 20 at 14)  Strojnik does not allege any facts related to the origin of the water sample pictured, how the water sample was drawn, or how the temperature was taken.  (*See id.*)

1   Strojnik contends the "[r]eflective surface [was] too high" and referenced the standards in

2   ADAAG § 603.  (Doc. 20 at 14)  He alleges that he "requires a compliant mirror reflecting surface in

3   order to enjoy full and equal access to the facility."  (*Id.*)  Under Section 603, "[m]irrors located above

4   lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches

5   (1015 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or

6   countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm)

7   maximum above the finish floor or ground."  ADAAG § 603.3.

8       Strojnik does not identify the location or height of the mirror in the photographed bathroom

9   though it appears the mirror may be behind, or to the side of, the sink, such that the Court may

10   determine which standard he believes was violated.  Strojnik offers no more than his conclusion that

11   the mirror height was "too high" and did not comply with the ADAAG and ADA.  *See Hotel Circle*

12   *GL Holdings,* 2019 WL 6212084 at *3 (finding the assertion that an item was "too high" was a "bare

13   legal conclusion[] cast in the form of factual allegations").

14       Moreover, Strojnik has not alleged any facts that connect his disability to the height of a

15   mirror.  For example, he was not using a wheelchair such that the height of the mirror was beyond his

16   scope.  (*See* Doc. 20 at 14)  Because Strojnik fails to allege facts to support his claim of a barrier under

17   Section 603.3 due to his disability, he fails to establish an injury-in-fact related to the height of the

18   mirror he encountered.

19   **K.    Height of security latch**

20       According to Strojnik, a door security latch was "over 48 [inches] high," and again references

21   ADAAG § 404 governing doors and doorways.  (Doc. 20 at 15)  Again, he fails to provide any

22   information about the location of the door, or whether it was intended to be "part of an accessible

23   route."  If not part of an accessible route, the standards under Section 404 are inapplicable.[3]  *See*

24   ADAAG § 404.1.  Further, Strojnik does not provide any information regarding whether the latch was

25   the only one to be used, or whether there was an alternative.  Finally, he again fails to allege facts that

26

27       [3] Notably, there are a significant number of standards set forth under Section 404 and—even if Strojnik provided facts supporting a conclusion that the referenced doorway was a part of an accessible route—it is unclear which standards he believes are violated.

28

13

explain how the alleged barrier—namely, the height of the security latch—relates to his specific disability and conditions.  As a result, Strojnik fails to allege facts supporting a conclusion that the height of the security latch caused him a concrete injury related to his specific conditions and fails to establish standing based on this alleged barrier.

### L.    Conclusion

Strojnik fails to allege any injury-in-fact related to the alleged barriers above, because he does not allege any facts related to how the identified barriers relate to *his* specific disability or disabilities. Although Strojnik provided a table identifying his disabling conditions and "major life activities" it affected, as well as a list of possible violations, Strojnik failed to allege how the barriers identified in the First Amended Complaint related to his conditions.  The failure to do so was fatal to his establishing an injury-in-fact, and his standing under the ADA.  *See Strojnik v. President Hotel Inv.*, 2020 WL 5260647 at *2 (C.D. Cal. May 5, 2020) (finding a table describing was Strojnik's disabilities and affected major life activities was "insufficient to meet standing requirements" because Strojnik did "not allege *how* the barriers he encountered related to his disability) (emphasis in original); *Orangewood*, 829 Fed. App'x at 783 (affirming the determination that Strojnik failed to establish standing where he "failed to allege that the ADA barriers he identified affected him because of his disabilities"); *see also Chapman*, 631 F.3d at 953-55 (an ADA plaintiff lacks standing "if the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability"). Accordingly, the Court finds Strojnik fails to establish Article III standing under the ADA and recommends the motion to dismiss under Rule 12(b)(1) be **GRANTED**, and the action be dismissed due to lack of jurisdiction.

### IV.    Dismissal under Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  As set forth above, Strojnik fails to

1  allege facts sufficient to support a claim for violations of the ADA.[4]  Thus, the Court finds dismissal

2  under Rule 12(b)(6) is also appropriate.

3  **V.     Findings and Recommendations**

4         Plaintiff failed to state facts sufficient to support a conclusion that he suffered an injury-in-fact

5  with the alleged barriers due to his disabling conditions.  Strojnik was previously informed of the legal

6  standards applicable to his claims, and the need "to allege sufficiently how his particularized injury

7  affected him; that is, how his disabilities relate to the barriers he encountered."  (Doc. 17 at 7) The

8  Court also informed Strojnik that "[s]hould any amended pleading be pled improperly, there will be no

9  further grant of leave to amend."  (*Id.* at 15) Because Strojnik again failed to allege facts sufficient to

10 support a determination that he has standing under Article III, the Court finds any further leave to

11 amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000); *Orangewood*, 829

12 Fed. App'x at 783.  Based upon the foregoing, the Court **RECOMMENDS**:

13     1.    Defendant's motion to dismiss (Doc. 21) be **GRANTED**;

14     2.    The First Amended Complaint be **DISMISSED** without prejudice due to the lack of

15          jurisdiction; and

16     3.    The Clerk of Court be directed assign a District Judge to the matter for purposes of

17          closing the action, and to close this action.

18        These Findings and Recommendations are submitted to the United States District Judge

19 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

20 Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen

21 days after being served with these Findings and Recommendations, any party may file written

22 objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's

23 Findings and Recommendations."  Any reply to the objections shall be filed within seven days of the

24 date of service of objections. The parties are advised that failure to file objections within the specified

---

[4] The First Amended Complaint indicates two causes of action in the caption: (1) "Americans with Disabilities Act" and (2) "Discrimination in Public Accommodations (State Law)."  (Doc. 20 at 1).  The Court previously declined to exercise supplemental jurisdiction over state claims. (Doc. 17 at 12) In addition, Plaintiff does not address the state law claims in the body of the pleading.  (*See generally id.* at 7-15) Thus, it appears the caption contains an error.

1   time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

2   1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

3

4   IT IS SO ORDERED.

5       Dated:   **January 27, 2021**           **/s/ Jennifer L. Thurston**

6                                    UNITED STATES MAGISTRATE JUDGE

16